**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
*Electronically Filed*

ANIMAL RIDDERS OF LOUISVILLE, INC.   )
aka ANIMAL RIDDERS, INC.   )
   )
                    Plaintiff   )   Civil Action No.: 3:25-cv-342-DJH-CHL
   )   Judge David J. Hale
vs.   )
   )
BEAU GAST   )
-and-   )
ANIMAL RIDDERS, LLC   )
   )
              Defendants   )

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Animal Ridders of Louisville, Inc. aka Animal Ridders, Inc. ("Plaintiff") by and through counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, moves for Summary Judgment as to all its claims against Defendants, and submits this memorandum in support thereof.

## INTRODUCTION

This case involves willful acts of service mark infringement, unfair competition, and other tortious conduct in violation of federal and state laws. Plaintiff has provided animal control/wildlife management services using the name mark ANIMAL RIDDERS in this community for decades. Defendant Beau Gast ("Gast") has been a direct competitor of Plaintiff in this region since at least 2020. Gast has also been a serial filer of entities and assumed names that are similar to the names of others, some of which he uses, others he does not. Unfortunately, a lost check for an annual report resulted in Plaintiff's administrative dissolution in October, 2024, giving Gast an opportunity to willfully seek to appropriate Plaintiff's name, identity, and reputation. When Plaintiff discovered the dissolution and sought to rectify it, it was also

discovered that in November 2024, Defendant Gast had formed Defendant Animal Ridders, LLC blocking Plaintiff's reinstatement under its longstanding name.  Moreover, at about the same time, Defendants launched an infringing website and started publicly using the name "Animal Ridders" and pretending to be Plaintiff.  Indeed, Defendants then send a "cease and desist" letter on March 15, 2025, to Plaintiff indicating that Plaintiff's use of its own name was causing market confusion and infringing upon Defendants alleged rights in the name and mark "Animal Ridders".

Plaintiff tried to explain the difference between company names, trade names, and trademark rights to Defendants.  However, it was clear that Defendants did not care to follow the law, believing instead that they could bully Plaintiff into abandoning valuable intellectual property rights, goodwill, and clientele, while appropriating those rights and benefit for themselves.

Plaintiff filed suit on June 9, 2025.  In the days and weeks that followed, Defendants made a slew of new filings with the Kentucky Secretary of State ("SOS") setting up new entities and establishing new assumed names, while withdrawing other filings, indicating an awareness of potential liability, but apparently attempting to confuse or evade liability for past actions.

Despite being properly served and made fully aware of the lawsuit, Defendants have failed to participate in the litigation in any way, including filing an answer to the Complaint or responding to discovery. Accordingly, the allegations of the Compliant (DN 1) and Plaintiff's unanswered Requests for Admission from each of the Defendants (Attached as **Exhibit A** "Gast RFA" [directed to Gast] and **Exhibit B** "Animal Ridders RFA" [directed to Animal Ridders, LLC]) are deemed admitted, per FRCP 8(b)(6) and 36 (3).

A hearing was held on July 9, 2025 on Plaintiff's Motion for a Preliminary Injunction. Defendant failed to appear.  DN 17, PageID.231.  The injunction was granted on July 11, 2025. DN 18, PageID.232 - 233.  Defendant ignored the injunction, prompting Plaintiff to file a Motion for Contempt, which remains pending before this Court.  DN 21. In light of Defendants' failure, it was then incumbent upon Plaintiff do what it could through third parties to enforce the preliminary

2

injunction and mitigate the harm caused by Defendants.  Ultimately, Plaintiff was able to secure the take-down of Defendants' infringing website and retrieve stolen online listings on sites such as Google and Yelp. But customer confusion and untold damage to Plaintiff's reputation is not so easily repaired.

There are no genuine disputes of material fact, and summary judgment is proper as a matter of law. Defendants have willfully infringed upon Plaintiff's rights and otherwise interfered with Plaintiff's business entitling it to damages and an award of attorney's fees.  Defendants must be permanently enjoined, made to compensate Plaintiff and suffer enhanced damages/sanctions for its willful and egregious conduct.

## STATEMENT OF FACTS

### A.    *Plaintiff's Rights in ANIMAL RIDDERS*

Plaintiff is a sole member Kentucky limited liability company formed and operated by Margie Darling ("Ms. Darling").  Plaintiff has provided animal control/wildlife management services in Kentucky and Southern Indiana using the name and service mark ANIMAL RIDDERS continuously since 1991. *Notice of Filing Exhibits*, DN 16-1, PageID.201. Plaintiff's website is www.animalridders.com. DN 16-4, PageID 211-212. During this time, Plaintiff has extensively promoted its ANIMAL RIDDERS name and mark in connection with its services and developed significant goodwill and public recognition in the name and service mark ANIMAL RIDDERS. This goodwill has been achieved at great time and expense DN 1, PageID.3.

Each year from 1991 through 2023, Ms. Darling filed an annual report for Animal Ridders, Inc. with the SOS. In 2024, Ms. Darling completed the annual report form for Animal Ridders, Inc. and mailed a check for the required fee to the SOS.   For some reason, however, the SOS did not receive Ms. Darling's check for the annual report filing fee. As a result, Animal Ridders, Inc. was administratively dissolved by the SOS on October 12, 2024 (the "Dissolution Date"). DN 1, PageID.3-4; DN 16-5.  After learning of the administrative dissolution in early March, 2025, Ms.

3

Darling immediately completed the necessary forms and paid the necessary fees to have Plaintiff corporation reinstated. The reinstatement process was completed on March 14, 2025. ("Reinstatement Date") DN 1, PageID.4; DN 16-6. Plaintiff's reinstatement was retroactive, as if the dissolution never occurred. KRS § 14A.7-030(3). *See also, Modern Holdings, LLC v. Corning Inc.*, 2015 WL 1481457, at *3 (E.D. Ky. March 31, 2015) (finding that a reinstatement "relates back to the effective date of the administrative dissolution"). Plaintiff continued to provide services under the service mark ANIMAL RIDDERS during the period of dissolution and continuing to the present. DN 1, PageID.4.

Although Plaintiff was able to be reinstated, the process brought an unwelcome surprise. Plaintiff could not be reinstated under the name Animal Ridders, Inc. because Defendants had seized the opportunity to form the entity Animal Ridders, LLC, on November 26, 2024. Plaintiff was required to change its formal entity name to Animal Ridders of Louisville, Inc. The addition of "of Louisville" was required to make the name "distinguishable upon the record" of the SOS, as required by Kentucky law. KRS 14A.3-010(1). *Id.* at Para. 28. However, the filing of any name with the SOS "does not automatically prevent the use of that name or protect that name from use by other persons" KRS 14A.3-010(18). Instead that is the province of trademark law.

**B.     *Defendants' Wrongful Conduct***

Defendant Gast has a penchant for registering entity names and assumed names with the SOS that are intentionally similar to other active entities or which become "available" for one reason or another. This is especially true when the names registered are the same as or similar to competitors or which relate to his line of work. Evidence of this activity is attached as **Exhibit C** which includes a list of organizations formed by Gast in Kentucky as well as information on the activities and assumed name filings of some of those entities which are relevant to this matter. *See also*, Exhibit A, RFA No. 29, 32. Plaintiff's inadvertent dissolution gave Defendant Gast another so-called "opportunity" to take advantage of a purportedly "available" name. Yet, Gast was well

4

aware that Plaintiff was still operating as ANIMAL RIDDERS, when he formed the Infringing Company upon Plaintiff's temporary dissolution in order to appropriate the name for himself. *Id*., at Nos. 1-2.

Beginning in or around March 2025, which coincided with Plaintiff's reinstatement, Defendants activated the website www.animalriddersoflouisville.com ("Infringing Website") (*See,* Home Page of Infringing Company's Website, DN 16-9;Exhibit A, RFA No. 36). Defendants had also begun to publicly market wildlife removal services as "Animal Ridders" knowingly and intentionally passing themselves off as Plaintiff or Plaintiff's successor to redirect and confuse Plaintiff's customers and to profit off of Plaintiff's established reputation and good will in the industry. Id., RFA Nos. 6-9, 16, 17. Defendants told customers that Margie Darling no longer owns or was no longer associated with Plaintiff. *Id*. at No. 3; Exhibit B, Animal Ridders RFA No. 3. Defendants contacted Google and caused Plaintiff's Google Map listing for ANIMAL RIDDERS to be changed from linking to Plaintiff's website and providing Plaintiff's contact information to link to the Infringing Website and displaying Defendants contact information. Exhibit A and B, RFA No. 4; DN 16-10. Defendants were also able to change Plaintiff's listing with Yelp to display Defendants' information rather than Plaintiff's. Exhibits A and B, RFA Nos. 5.

Within days of the Reinstatement Date, Defendants contacted Ms. Darling, by phone, followed by an email sent to Ms. Darling and to Plaintiff's marketing and website support company, RedTag, Inc. ("RedTag") claiming that Plaintiff lost the right to use ANIMAL RIDDERS (with or without "Of Louisville") through the administrative dissolution, that Defendants now owned the rights to "Animal Ridders" and that Plaintiff's continued use of the mark after November 26, 2024 constituted infringement of Defendants' rights in "Animal Ridders". DN 1, PageID.5; *See also* Gast email, DN 16-7.

In response to the cease and desist letter, RedTag temporarily disabled Plaintiff's website. The website was reinstated when RedTag understood that Plaintiff had prior rights to Defendants and that the organization of an entity under a particular name does not confer trademark rights, and particularly does not supersede existing rights in a mark.  DN 1, PageID.5. RedTag also attempted to restore Plaintiff's information to the Google Maps listing.  RedTag was advised that the listing was unavailable to Plaintiff due to the listing of the Infringing Company's information. *Id*., at Para. 39*; See also* Affidavit of Greg Freibert and corresponding exhibits, DN 1-6.  It was not until after this Court entered a preliminary injunction in this action that the listings with Google and Yelp were ultimately restored to Plaintiff.

Defendants pursued additional measures to pose as Plaintiff and to otherwise interfere with her business operations.  Defendants sent false requests for animal control services through Plaintiff's website from far away locations (e.g., Guam) where Plaintiff does not conduct business. *See* Stone Affidavit and corresponding exhibits, DN 1-7.  Defendants also caused phone calls to his business from persons seeking assistance with the removal of dead domestic animals or assistance with stray cats and dogs to be redirected to Plaintiff's telephone number.  These services are provided to residents in the community by Louisville Metro Animal Services free of charge. Neither Plaintiff nor Defendants' are engaged in the private enterprise of providing these services, though consumers often mistakenly believe that these services are provided by the parties. Exhibits A and B, RFs Nos. 11-13. Typically, wildlife management providers will redirect such calls to the local government provider.  Here, however, Defendants caused those calls to be redirected to Plaintiff  as a means of intimidation, harassment, and damage to reputation.  The callers would be frustrated to be redirected to Plaintiff only to be redirected again to the government provider.

Further, Defendants used a sponsored Google® ad which appears to be Plaintiff's ad, with Plaintiff's name (Animal Ridders, Inc.), a link to Plaintiff's website (www.animalridders.com),

and a phone number link to call Plaintiff's number (502-423-0461).  Yet when a customer clicked on the call link, the call was made to Defendants' number, not Plaintiff's number.  The phone was answered "Animal Ridders" and when the caller asked to speak to the owner of Animal Ridders, Margie Darling ("Ms. Darling"), the caller was told that Ms. Darling no longer works for the company and/or no longer owns the company.  The new facts, set forth below, are supported by the Affidavit of Ashley Blacketer ("Ms. Blacketer"), DN 8-2. Ms. Blacketer is a confused customer who clicked on the sponsored ad for Plaintiff only to reach Defendants.

Defendants' actions are causing actual confusion in the market for wildlife management services in the Kentucky and Southern Indiana market where Plaintiff operates. This confusion is seriously impacting Plaintiff's business.  Since Defendants began publicly marketing its services as ANIMAL RIDDERS, Plaintiff's service calls and income have dropped precipitously.  Weekly calls for services dropped by approximately half of what they were prior the commencement of Defendants' actions set forth herein. DN 1, PageID.6.

Instead of building his own goodwill and reputation, Defendants chose to steal Plaintiff's reputation and to force Plaintiff to stop using its long-standing name and mark. It is impossible to know how many clients have called the Infringing Company looking for, or believing that they were contacting, Plaintiff or Ms. Darling, and what level of services such confused customers received.  Thus, it is impossible for Plaintiff to control its own reputation in the market.

Defendant Mr. Gast is no stranger to the animal control and wildlife management or removal services in this community.  He was employed by Louisville Metro Animal Services in 2015 and 2016.  Thereafter he began operating various entities in the field, including Humane Wildlife Control Services, LLC (formed as early as 2012 in Louisianna, then registered in Kentucky) which has registered over two dozen assumed names with the SOS, notably including names similar to the Louisville Metro Animal Services where he used to work such as "Louisville

Animal Services," "Jefferson County Animal Control" Louisville Animal Control.   DN 1, PageID.7.

Defendant Mr. Gast also set up an organization doing business as Kentucky Wildlife Control Operators Association[1].  Mr. Gast was the original Director for, and continues to be, the Director of this organization.  As shown in DN 1-8, Page.ID.66, this organization includes a directory listing for Ms. Darling and Animal Ridders, with the correct phone number for ANIMAL RIDDERS in a list of wildlife control operators.  Notably, however, Plaintiff is not a member of this organization and did not request or cause this listing to be created. DN 1, PageID.7.

In sum, Defendants have been using "Animal Ridders" in direct competition with Plaintiff and passing themselves off as Plaintiff or Plaintiff's successor.   In so doing, Defendant intentionally set out to steal the name "Animal Ridders" from Plaintiff and steal the goodwill and client base of a well-established direct competitor.  To make matters worse, Defendants have devised multiple ways to annoy and harass Plaintiff and its operations through redirected calls and false service request from far flung locations.

## ARGUMENT

### I.     Summary Judgment Standard

Summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Gen. Conf. Corp. of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 405 (6th Cir. 2010) (quoting Fed.R.Civ.P. 56(c)). The question is  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 415 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In other words, there must be

---

[1] The entity's formal company name is Kentucky Society for the Prevention of Cruelty to Animals, Inc. ("KSPCA"). It has additional active assumed name filings for Humane Society of Louisville, and Kentucky Wildlife Rehabilitators Association, and a cancelled assumed name filing for Louisville Animal Control (not affiliated with Louisville Metro Animal Control Services).

8

sufficient evidence for a jury to reasonably find for the nonmoving party; "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient . . . ." *Maker's Mark Distillery, PBC v. Spalding Grp., Inc.*, No. 319CV00014GNSLLK, 2024 WL 947538, at *5 (W.D. Ky. Mar. 5, 2024) (quotation omitted).

**II.    Plaintiff is Entitled to Summary Judgment on its Claims of Trademark Infringement Under Both the Lanham Act and Kentucky Law.**

Summary judgment is appropriate as to Plaintiff's claims for trademark infringement under §43(a) of the Lanham Act, 15 U.S.C. §1125(a) and under Kentucky common law and KRS §365.601.  Section 43(a) of the Lanham Act makes it unlawful for any person "who, on or in connection with any goods or services ... uses in commerce any word, ... false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person." 15 U.S.C. §1125(a).  Section 43(a) forbids unfair trade practices involving infringement of trademarks, service marks, or trade dress, even in the absence of federal trademark registration. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The standard for finding infringement under the common law of Kentucky and KRS §365.601 is the same. *See* KRS §365.611. Thus, Counts I, II, and III are addressed applying the Lanham Act standards.

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 264 (6th Cir. 2021) (quotation omitted). The determining factor for § 43(a) and related state law claims is whether the public is likely to be deceived or confused by the similarity of the marks at issue. *Two Pesos, Inc,* 505 U.S. at 780 (Stevens, J., concurring) *See also, Genny's Diner & Pub, Inc. v. Sweet*

*Daddy's, Inc.,* 812 F.Supp. 744, 746 (W.D. Ky 1993).  Evidence of Defendants' wrongful use of Plaintiff's mark is discussed throughout this memorandum. Below, Plaintiff focuses on the first and third prongs of the analysis.

<b>1.      Plaintiff is the Owner of Prior Trademark Rights</b>

Plaintiff owns rights in ANIMAL RIDDERS.  Substantive rights to mark arise based on use of the mark in commerce.  "Use in commerce" means "the bona fide use of a mark in the ordinary course of trade."  *See* 15 U.S.C. §1127. With respect to services, a mark is deemed used in commerce when the mark "is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id*. Plaintiff has used the mark in commerce for wildlife management services for over 30 years.   There is no issue as to priority here in that Defendants' use of the mark recently commenced.

To acquire rights in a mark, the mark must also be distinctive, either inherently distinctive or having acquired distinctiveness through substantially exclusive use for a period of time (generally presumed after 5 years of such use).  Plaintiff submits that the mark ANIMAL RIDDERS is an inherently distinctive mark.  But, even if it were not inherently distinctive, Plaintiff's use in this market for over 30 years on a substantially exclusive basis would demonstrate acquired distinctiveness.  In addition, the 6th Circuit has long recognized that "evidence of intentional copying shows the strong secondary meaning of [a product] because '[t]here is no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Abercrombie & Firch Stores, Inc. v. American Eagler Outfitters, Inc.*, 280 F.3d 619, 639 (6th Cir. 2002) (citations omitted). Clearly, there is evidence in this case of Defendants' intent to copy.

Defendants have admitted Plaintiff's rights by failing to answer the Compliant and failure to respond to Requests for Admission.  Therefore, Plaintiff has satisfied the first requirement for an infringement claim.

10

**2.  There is a Likelihood of Confusion between Plaintiff's and Defendants' use of ANIMAL RIDDERS for Competing Services.**

The cornerstone of a likelihood of confusion analysis is whether the ordinary, prudent consumer in the marketplace would likely be confused. 3 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, 4th Ed., § 23.63.  The inquiry is not limited to whether one product or service would be mistaken for the other but includes any false or misleading suggestion of any affiliation or relationship amongst companies or their products or services.  *See* 15 U.S.C. §1125(a).  Each Circuit has adopted a set of factors for determining likelihood of confusion. In the Sixth Circuit, the factors for determining likelihood of confusion were established in *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642 (6th Cir. 1982), and are as follows:

- Strength of the plaintiff's mark
- Relatedness of the parties' goods or services.
- Similarity of the parties' marks.
- Evidence of actual confusion between the parties' marks.
- Marketing channels used by the parties.
- Likely degree of purchaser care in the relevant consumer group.
- The defendant's intent in selecting the mark.
- Likelihood that either party will expand its product lines.

There is no mathematical formula for applying the *Frisch*'s factors and the plaintiff does not need to show all or even most of the factors to prevail. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) (Plaintiff's trademark "Classic" on car care products was infringed by defendant's use of the same mark on bulk car wax and car washes)

**a.  The Marks, Services, and Marketing Channels are Identical**

Here, the 2nd, 3rd, 5th, and 8th factors can be assessed in summary fashion because the marks are identical, the services are identical, and the marketing channels are identical.  All of these factors are squarely in favor of Plaintiff.  In the 6th Circuit, courts have classified cases generally "into one of three categories regarding the relatedness of the goods and services of the parties. First, if the parties compete directly by offering their goods or services, confusion *is likely* if the

marks are sufficiently similar; second, if the goods or services are somewhat related but not competitive, the likelihood of confusion will turn on other factors; third, if the goods or services are totally unrelated, confusion is unlikely." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.,* 109 F.3d 275, 282 (6th Cir. 1997) (emphasis added). In such cases, the likelihood of confusion is inevitable. Cases where a defendant uses an identical mark are "open and shut" and do not involve protracted litigation to determine liability for trademark infringement." 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §23:3 (1996), cited favorably in *Wynn,* 839 F.2d 1183.

This is an open and shut case. The parties are direct competitors both using AMINAL RIDDERS, so confusion *is likely,* and there is no genuine dispute of material fact as to this factor.

### b. The Remaining Frisch's Factors Favor Plaintiff

Although the remaining factors are of less importance given the identity of the marks, the services, and the marketing channels, they nonetheless also favor Plaintiff as there is no genuine dispute of material fact as to these factors.

As for the first factor, strength of the Plaintiff's mark can be established through its distinctiveness, its recognition the market, or both. *ServPro Intell. Prop., Inc. v. Blanton,* 451 F. Supp. 3d 710, 722 (W.D. Ky. 2020) (citations omitted). As noted above, the mark is inherently distinctive or has acquired distinctiveness and recognition over a long period of time and through extensive promotion. In addition, Plaintiff has promoted her mark in this community for over 30 years. It is accepted as the hallmark of Plaintiff as the source of the services.

With respect to actual confusion, "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion." *Wynn*, 839 F.2d at 1188. That said, "it does not follow that lack of evidence of actual confusion should be a significant factor.... this fact does not preclude this Court from concluding that there is a 'likelihood of confusion', as actual confusion is merely one factor to be considered by the Court when it makes its determination." *Id.*

In this case, there is evidence of actual confusion. Defendants admit to actual confusion in correspondence with Plaintiff's counsel. DN 1-9, DN 16-7. Persons have contacted Defendants looking for Plaintiff or Plaintiff's principal, Ms. Darling, only to be told Ms. Darling no longer owns the company. DN 8-2. There is a direct correlation to Defendants' commencement of activity and the loss of Plaintiff's business indicating that Defendants' have been effective in causing customers to mistakenly believe that Defendants are Plaintiff or Plaintiff's successor. DN 1, PageID 6.

The 7th factor is Defendants' intent. Defendants intent is admitted. **Exhibits A** and **B** Nos. 7, 8, and 17. In any event, "intent to infringe can be shown by circumstantial evidence." *Wynn Oil Co. v. Am. Way Serv. Corp.* ("*Wynn II*"), 943 F.2d 595, 603 (6th Cir. 1991) (citations omitted). *See also, Champions Golf Club, Inc. v. The Champions Golf Club*, 78 F.3d 1111, 1121 (6th Cir. 1996). Intent can also be inferred where, as here, Defendants are aware of the Plaintiff's mark and the Defendants' use of the mark indicates an intent to create the impression of an affiliation. Aside from the fact that Defendants knowingly tried to take advantage of Plaintiff's temporary dissolution, the fact that Google Maps has been changed from Plaintiff's contact information to Defendants' contact information is clear evidence of Defendants' intent to associate with, in fact, pretend to be, Plaintiff. Defendant Mr. Gast has been competing with Plaintiff for at least a decade in this community using a name other than ANIMAL RIDDERS. Yet, when he saw that Plaintiff's business was administratively dissolved, he seized upon the opportunity to set up company using his direct competitor's name, then sought to stop the competitor from using its long standing name. There can only be one purpose for Defendants' actions; namely, to appropriate the goodwill Plaintiff developed over a 30 year period.

Given the fact that the marks at issue here are (1) identical; (2) being used in connection with identical, competing services; (3) marketed to the exact same consumers in the same trade area; and (4) marketed and used in advertising in a similar fashion, coupled with Defendants intent

to copy Plaintiff's well established mark, plus the fact that there has already been some actual confusion, their likelihood of confusion is inevitable.

### III.    Plaintiff is Entitled to Summary Judgment on its Claim of Tortious Interference with Prospective Business Advantage

Under Kentucky law, a plaintiff must establish the following in order to prove a claim for tortious interference with a prospective business advantage: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered; (4) that the motive behind the interference was improper; (5) causation; and (6) special damages. *Snow Pallet, Inc. v. Monticello Banking Co.,* 367 S.W.3d 1, 6 (Ky. App. 2012) *citing Monumental Life Ins. Co. v. Nationwide Retirement Solutions, Inc.,* 242 F.Supp.2d 438, 450 (W.D. Ky. 2003).  "A valid business expectancy exists when there is a reasonable likelihood or a probability, not mere wishful thinking that a business relationship will come about." *PBI Bank, Inc. v. Signature Point Condominiums, LLC*, 535 S.W.3d 700, 716 (Ky. App. 2016) *quoting Ventas, Inv. v. Health Care Prop. Inv'rs, Inc.,* 635 F.Supp.2d 612, 621 (W.D. Ky. 2009) (applying Kentucky law).  Intentional interference does not require a showing of ill will, but rather interference without justification. *Id.* at 715*, citing Nat'l Collegiate Athletic Assn. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988).  Diverting a business expectancy for one's own financial benefit is not justified under Kentucky law.  *Id.* at 716 (holding defendant's interference with sale of property so that profits realized from sale would accrue only to the defendant was not justifiable interference).

Here, Plaintiff has established, and common sense dictates, that Defendants' use of the trademark and tradename owned by Plaintiff is creating confusion in the marketplace, and wrongfully diverting Plaintiff's business to Defendants. As previously stated, the Infringing Company has only been in existence for a few months. Animal Ridders on the other hand, has been in existence for 34 years. It is therefore not only possible, but likely, that when a customer is

14

searching for the website or phone number of "Animal Ridders", they are looking for the well-established and well known company that has existed in the Louisville community for over three decades. Due to Defendants' actions however, these customers may accidently end up on the Infringing Company's website, not realizing that it is not the company they were looking for. This is made even more likely by the fact that Defendants have changed Google Maps and Yelp to reflect only the Infringing Company's information. Meaning, that the only way that potential customers can find Animal Ridders is by going to Plaintiff's website directly. Through their violations of the law, Defendants have tortiously interfered with Plaintiff's business expectancy. There is no genuine dispute of material fact as to this claim, as Defendants have admitted them all.

**IV.    Plaintiff is Entitled to Summary Judgment on its Claim of Unfair Competition**

Under Kentucky law, "unfair competition" consists of "injuring the plaintiff by taking her business or impairing her good will." *Covington Inn Corp. v. White Horse Tavern, Inc.,* 445 S.W.2d 135, 139 (Ky. 1969).  In order to prevail on a claim for unfair competition, "there must be some competitive aspect, and the defendant must be acting unfairly in a manner which invades the plaintiff's protected rights." *Id.*  The *White Horse Tavern* court defined unfair competition to include "many varying types of business conditions" extending to other "acts done or practices employed for the purpose of pirating the trade of a competitor" and "applying to misappropriation as well as misrepresentation, to the selling of another's goods as one's own - to misappropriation of what equitably belongs to a competitor." *Id.* at 137-38.

Kentucky law has long held that the underlying principle of unfair competition law is "common business integrity." *Acy v. Whaley*, 136 S.W.2d 575, 577 (Ky. 1940).  Further, as stated by the Kentucky Court of Appeals (then Kentucky's highest court), "any act smacking of unfair competitive methods should be viewed with a critical and suspicious eye." *U-Drive-It Co. v. Wright & Taylor*, 110 S.W.2d 449, 452 (Ky. 1937).  Unfair competition is a label designed to reach the conduct of a competitor which departs from the "good faith and honest, fair dealing" which is

15

essential to encourage invention in the commercial world. *Johns-Manville Corporation v. Guardian Industries Corporation*, 586 F.Supp. 1034, 1073-74 (E.D. Mich. 1983), *citing Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 481-82 (1974). While proper competition does not give rise to a cause of action, competition based on improper actions does. *Potter v. Colvin,* 302 S.W.2d 105, 108 (Ky. 1957).

Here, Defendants have engaged in unfair competition through the willful violation of trademark law, and infringement of Plaintiff's trademark. Defendants have further passed of the Infringing Company as the Animal Ridders in an effort to deceive customers into believing they are hiring the well-known and long-standing company. This is not "good faith and honest, fair dealing."

**V.      Plaintiff is Entitled to A Permanent Injunction.**

Section 35 of the Lanham Act permits courts to grant injunctions for trademark infringement "according to the principles of equity and upon such terms as the court may deems reasonable. 15 U.S.C. §§ 1116(a), 1117(a). In the Sixth Circuit, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Maker's Mark Distillery, Inc. v. Diageo North America, Inc.*, 703 F.Supp.2d 671, 700 (W.D. KY 2010) (citations omitted). A plaintiff seeking a permanent injunction must show that (1) it has suffered irreparable injury, (2) there is no adequate remedy at law, (3) a remedy in equity is warranted when considering the balance of hardships between the parties, and (4) it is in the public's interest to issue the injunction. *Id*.

Generally, irreparable injury is presumed from a showing of success on the merits of a trademark infringement claim. As to the second factor, equitable relief is probably the surest way to prevent further consumer confusion of the public. *Id*.

16

As to the third factor, comparison of harm, there is no question that Plaintiff's longstanding rights take precedence over Defendants' intentional wrongdoing.  Plaintiff has expended considerable amounts of money and effort building its reputation.  Defendants on the other hand merely appropriated what belongs to Plaintiff.  Finally, under the last factor, it is in the public's best interest to be certain that consumers are not misled in the future. Injunctive relief assures this. *Id*.

As to the scope of the remedy, Plaintiff submits that the Court should apply the "Safe Distance" rule in fashioning the injunction.  As noted in *Innovation Ventures, LLC v. N2G Distributing, Inc*., 763 F.3d 524, 544 (6th Cir. 2014), the Safe Distance rule is a useful tool in enforcing permanent injunctions, particularly in cases of egregious or contemptuous conduct. "The Safe Distance Rule  prevents  known infringers from  using trademarks whose use  by non-infringers would not necessarily be actionable."  Once a party infringes on another's trademark or trade dress, the confusion sowed "is not magically remedied" by *de minimis* fixes. *Id.* at 779 . "Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id., citing Taubman Co. v. Webfeats,* 319 F.3d 770, 778–79 (6th Cir.2003) (citing Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353 (6th Cir.1930)).

Here, Defendants engaged in willful infringement.  They have ignored this litigation including the Court's preliminary injunction as noted in Plaintiff's Motion for Contempt. DN 21. Moreover, Plaintiff has discovered that after this litigation was filed and Defendants were served, Gast filed articles of incorporation for a number of different entities and assumed names using RIDDERS AND RITTERS with alternative names for "animals".  See, Exhibit C.  Accordingly, Defendants should be enjoined from any use of RIDDER or RIDDER in connection with animal

17

control/wildlife management services, in addition to being enjoined from use of ANIMAL RIDDERS and from interfering with Plaintiff's business.

## CONCLUSION

For the reasons set forth above, summary judgment is appropriate in this case in favor of Plaintiff on all claims. Therefore, Plaintiff respectfully requests the Court grant its Motion, and enter the proposed order tendered herewith.

Respectfully submitted,

 *s/ Amy B. Berge*
Amy B. Berge
M. Katherine Ison
Jennifer M. Barbour
**GRAY ICE HIGDON, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, Kentucky 40207
(502) 677-4729
aberge@grayice.com
kison@grayice.com
jbarbour@grayice.com
*Counsel for Plaintiff*

18

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this **_10th_** day of February, 2026, e-filed the foregoing in accordance with the rules of Electronic Court Filing (ECF) in effect for the Western District of Kentucky, Louisville Division and a copy of same is being served via the US Postal Service on the following:

Beau Gast
6006 Crockett Drive
Louisville, KY  40258
*Defendant*

Animal Ridders, LLC
Beau Gast, Registered Agent
6006 Crockett Drive
Louisville, KY  40258
*Defendant*

  *s/ Amy B. Berge*
*Counsel for Plaintiff*

19